IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| AARON LEE BURROWS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:14-cv-00314-TFM |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

Aaron Lee Burrows ("Plaintiff") brought this action for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), which denied his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403. The parties have filed cross-motions for summary judgment (ECF Nos. 10, 12), which are have been fully briefed (ECF Nos. 11, 13) and are ripe for disposition.

**II.    Background**

As of the date of the decision of Administrative Law Judge David F. Brash ("ALJ"), Burrows was 29 years old.[1] Despite a history of Attention Deficit Hyperactivity Disorder ("ADHD"), he is a high school graduate. Burrows served as a sergeant (E-5) in the United States Marine Corps for seven years, including deployments in Iraq and Afghanistan as a combat

---

1.     Thus, he is a "younger person" under the regulations. 20 C.F.R. § 404.1563(b) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work.").

1

engineer. During his military service he was exposed to multiple blasts from mortar shells and Improvised Explosive Devices ("IEDs") and suffered seven concussions. On February 18, 2010 two fellow Marines were killed directly in front of him and three others were wounded.

As a result of this incident, Burrows was reassigned to a non-combat position at Camp LeJeune, North Carolina for "broken" Marines. Burrows testified that he simply sat in an office and did nothing for the next two years, although he continued to be paid. R. 73, 206. During this time, Burrows got divorced and received custody of his two young sons. On April 29, 2012, Burrows received a medical retirement and honorable discharge. The Veterans Administration ("VA") rated Burrows as 90% disabled, due to post-traumatic stress disorder ("PTSD"); migraine headaches; traumatic brain injury ("TBI"); left and right hip strains; right and left knee patellofemoral syndrome; and lumbar strain.[2]

Burrows then moved back to Pennsylvania with his sons. He initially lived with his parents. Upon his relocation, Burrows presented to Marie Frino, M.D., at the VA clinic in Venango, Pennsylvania. Burrows reported anxiety, uncontrolled anger, depression, memory loss and tension headaches. He reported that his mother had flushed his hydrocodone pills, which he was prescribed for headaches and back pain, down the toilet because she thought they were an old prescription for his father. He further reported that the diazepam was not working, so that he took more than prescribed to control panic attacks. R. 1242. Burrows denied any substance abuse or pill-seeking. Nevertheless, the VA found that he had violated his pain medication agreement and refused to prescribe further opiate medications.

---

[2] On August 4, 2014, the VA concluded that Burrows was 100% disabled due to PTSD. R. 1347, 1354. However, this decision was not available to the ALJ and therefore will not be considered by the Court. *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).

2

Burrows was angered by this decision and began treating with psychiatrist Matthew Meyer, M.D., at the VA in Erie, Pennsylvania. Dr. Meyer ruled out malingering and substance abuse, but noted a "questionable history of substance abuse." R. 773-774. On May 25, 2012, Michael Orinick, M.D., opined that there were no "red flags" for drug-seeking behavior, and reinstated the pain medications. Burrows agreed to frequent urine testing and other conditions. R. 1195-1196. On June 29, 2012, Burrows had a positive urine analysis for morphine. He called the clinic on July 2, 2012 to object that it must have been a false test and offered to take another urine test. Burrows failed to attend further appointments at the VA and treatment was discontinued. R. 705-707. At the time, he was having daily panic attacks and anxiety. Burrows then began to be treated by a private physician in the Titusville, Pennsylvania area.[3] He eventually was prescribed an effective medication regimen which consisted of Prozac, Adderall, and Xanax and Trazodone as needed. R. 1092.

From July-October 2012, Burrows worked as an insulation installer. He testified that he quit because he was losing tools, not showing up on time, had a bad attitude and lost patience with his boss. R. 54. The ALJ characterized this as an unsuccessful work attempt. The record reflects that Burrows was able to care for his sons throughout the relevant time period (albeit with help from his mother and girlfriend); that he performed household tasks, handled his finances and engaged in activities such as hunting, fishing, mowing, grocery shopping and working on cars.

In January 2013, Burrows had an angry outburst and was briefly hospitalized. R. 1126. Burrows was kicked out of his parents house for not being able to handle his irritability. He now lives in a separate home with his girlfriend and sons.

---

[3] This physican's name is not in the record, nor are treatment notes provided.

## A. Procedural History

Plaintiff protectively filed an application for DIB on September 5, 2013, alleging an onset of disability date of February 18, 2010. Plaintiff's claim was denied at the administrative level, and he requested a hearing, which was held on June 12, 2014, in Mars, Pennsylvania, before ALJ Brash. At the hearing, Plaintiff sought to amend his onset date to April 29, 2012. The ALJ declined to do so. Instead, the ALJ reopened a prior claim filed by Burrows on which an unfavorable decision had been issued on October 4, 2012. Plaintiff was represented by a non-attorney representative and testified at the hearing, as did an impartial vocational expert.

On June 21, 2014, the ALJ rendered an unfavorable decision to Plaintiff, finding that he was not disabled through the date of the ALJ's decision. (R. 21-37). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. This appeal followed.

## B. Medical Evidence

In this appeal, Plaintiff focuses solely on his alleged mental disabilities. Therefore, the Court need not discuss his physical impairments.

As a child, Burrows was prescribed Ritalin and later Dexadrin for his ADHD. It was eventually discontinued due to sleep disturbance. Burrows testified that he outgrew his ADHD, but that the combat trauma triggered renewed symptoms. Upon his return from Afghanistan, Burrows received treatment at Camp Lejeune from Robert Wayne Wilson, M.D. He also underwent extensive neuropsychological testing. A neurological examination and brain MRI on November 2, 2010 was essentially normal, as noted by Julio J. Rentas-Reyes, M.D. R. 303. However, Dr. Rentas-Reyes noted in the same report that Burrows suffered from "post-traumatic

migraine headaches that were severe enough to make him completely disabled at least twice a week. When this happens, he cannot function at work." R. 304. On September 11, 2011, Dr. Rentas-Reyes opined that Burrows was precluded from continuation on active duty. In January 2012, Burrows began treating with psychiatrist Ameliann Williams, M.D. Numerous medications were prescribed throughout this time period, but many caused unacceptable side effects. R. 1092.

Upon his return to Pennsylvania in May 2012, Dr. Frino changed Burrows' prescribed medications. Burrows did not adjust well to the new medications and was found to have broken his pain medication agreement, as described above. Burrows transferred from Dr. Frino in Venango to Dr. Meyer in Erie. He continued to be viewed as in violation of his pain medication agreement and stopped going to the VA. Eventually, a private physician prescribed an effective medication regime.

On April 19, 2013, he underwent a psychological exam by Edward Dabkowski, Ph.D. at the VA. Dr. Dabkowski noted use of marijuana (one joint daily) which he attributed to a misguided effort on Burrows' part to self-medicate the symtoms of his PTSD and anxiety. R. 1112-1113, 1119. Dr. Dabkowski opined that Burrows had occupational impairment with reduced reliability and productivity that was due to PTSD and TBI, not marijuana abuse. R. 1114-1115.

In October 2013, Michael Mercatoris, Ph.D., performed a state agency consultation. Dr. Mercatoris noted that Burrows was capable of driving, handling personal finances and caring for his children and activities of daily living. On the other hand, Dr. Mercatoris observed that Burrows had characteristics of PTSD, panic disorder with agoraphobia, major depression, TBI and post-concussive syndrome which were "chronic conditions." R. 961. Dr. Mercatoris stated

that Burrows' ability to carry out instructions would be complicated and he would be slow to complete activities but that he should be able to adapt to simple changes in a work situation. R. 961-962. Finally, Dr. Mercatoris opined that Burrows "may not maintain regular attendance due to his PTSD symptomatology yet." R. 962.

On October 29, 2013, state agency physician Jay Vizza, Psy.D., prepared a record review Mental Residual Functional Capacity Assessment ("MRFC") in which he opined that Burrows would be able to maintain regular attendance and sustain an ordinary routine in a stable work setting. R. 111. Dr. Vizza stated that he gave the opinion of examining psychologist Dr. Mercatoris "great weight," but did not explain why he reached a different conclusion regarding the ability of Burrows to maintain regular attendance.

Burrows received psychiatric treatment from Gregory Richards, M.D., at the Erie VA. On February 13, 2014, Dr. Richards examined Burrows and prepared a report in which he opined that Burrows is unable to work. R. 975-982. Dr. Richards assigned a GAF score of 45 and issued a guarded prognosis given Plaintiff's disabilities. R. 975. Dr. Richards noted impaired concentration and task completion deficits and opined that Burrows was "markedly limited" in his ability to sustain a normal work day and work week (i.e., effectively precluded from performing work in a meaningful manner). R. 977. Dr. Richards opined that the impairments would last more than twelve months and that Burrows was not a malingerer. R. 981.

On May 6, 2014, Burrows reported to Debra A. Semanscin-Doerr, Clinical Psychologist, that he wanted to work but was unable to sustain employment. He stated that his irritability, anger outbursts and memory problems had been getting worse. R. 1304. Dr. Doerr opined that his medication regime had been effective.

In May 2014, Burrows underwent a neuropsychologic examination at Northshore Neurosciences.[4] Although his full-scale IQ score was 99 (average), his working memory was in the 18th percentile and his mental math was at the 5th percentile. R. 1321-1322. The examiner noted PTSD and major depressive disorder but opined that the current test results did not support the presence of major deficits associated with mild traumatic brain injury or a neurocognitive disorder at this time. R. 1333.

Primary care doctor John Balmer, D.O., treated Burrows beginning in January 2013. Dr. Balmer completed a Headaches Impairment Questionnaire which reflected that Burrows had severely intense headaches of 5-7 hours four times a week. R. 1337-1338. Dr. Balmer opined that Burrows would be precluded from performing even basic work more than three times per month. R. 1341.

At the hearing, the Vocational Expert ("VE") testified that for unskilled sedentary jobs suitable to Burrows' RFC, the tolerance for being off-task would be approximately 15% of the workday and the tolerance for absenteeism would be less than one day per month. R. 83-84.

The ALJ issued a 17-page opinion on June 21, 2014. As an initial matter, the ALJ found that Burrows had engaged in substantial gainful activity in the Marine Corps from February 2010 through April 2012. This finding has not been challenged by Plaintiff. The Court holds that this finding is supported by substantial evidence.

The ALJ then followed the required sequential, five-step process. At step one, he found that Burrows had not engaged in substantial gainful employment since April 2012. The ALJ found that Burrows had numerous severe impairments, namely, PTSD, anxiety disorder, cognitive disorder, adjustment disorder with depressed mood, post-traumatic migraine headaches, post-concussive syndrome, status post-traumatic TBI, panic disorder with

---

[4] The examiner is unknown and the records appear to be somewhat incomplete.

agoraphobia, major depressive disorder and ADHD.[5] The ALJ concluded that Burrows did not have a listed impairment. In particular, the ALJ specifically rejected the opinion of Dr. Richards that Burrows had marked impairments in his Mental Residual Functional Capacity ("MRFC") and had a GAF score of 45. The ALJ relied on the fact that Burrows was quite functional in his activities of daily living, including raising his two young children and cited the May 2014 neuropsychological evaluation that had concluded that Burrows had no major deficits secondary to his mild traumatic brain injuries. The ALJ stated (without explanation) that his assessment was consistent with the opinions of Dr. Mercatoris and Dr. Vizza. R. 28. The ALJ gave the opinion of Dr. Mercatoris "great weight." R. 35.

At steps 4 and 5, the ALJ found that Burrows had a RFC with the following mental limitations: a moderate noise intensity (level 3); understanding, remembering and carrying out simple instructions and simple, routine tasks; no contact with the public; occasional interaction with co-workers and supervision; low stress (i.e., no production rate pace work); and goal-oriented work with only occasional and routine changes in work setting. The ALJ acknowledged Burrows' testimony that on average he gets migraine headaches three times per week and that he continues to treat with Dr. Richards for his PTSD and TBI injuries. The ALJ also recognized that Burrows was rated 90% disabled by the VA, but declined to accord significant weight to that rating. The ALJ found that Burrows' testimony regarding the intensity, persistence and limiting effects of his symptoms was not entirely credible. In part, the ALJ reasoned that the medical record did not support Burrows as to his claimed physical limitations and that Burrows had engaged in drug-seeking behavior. The ALJ cited the normal MRI test in 2010 and that in 2011 Burrows had entertained the idea of training troops in Uganda (although the ALJ did not mention that Burrows raised a concern about being exposed to more trauma and did not take the job).

---

[5] The ALJ concluded that all of Plaintiff's claimed physical impairments were non-severe.

8

The ALJ found that Burrows was unable to perform past work. Nevertheless, based on the VE testimony, the ALJ found that Burrows could perform other work, such as assembler, laborer or surveillance system monitor. In reaching this conclusion, the ALJ did not specifically address the VE's testimony with respect to absenteeism.

### III.  Legal Analysis

#### A.  Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g)/1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DBI] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v.*

*Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating that a claimant's burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his

or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

When a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

**B.     Discussion**

Plaintiff contends that the ALJ failed to properly evaluate the medical evidence regarding the inability of Burrows to maintain regular attendance at work. In particular, Plaintiff cites to the opinions of treating physicians Dr. Richards and Dr. Balmer. Plaintiff also cites to the consistent opinion by Dr. Mercatoris that Plaintiff may not maintain regular attendance due to his PTSD, to which the ALJ stated that he had given great weight. The Commissioner contends that substantial evidence supports the decision of the ALJ and that the RFC adequately reflected the impairments in Burrows' ability to work.

The Court agrees with Plaintiff. In many respects, the ALJ performed a thorough analysis and gave reasons for reaching his decision. In particular, it was laudable for the ALJ to give specific reasons for each restriction in the RFC. R. 34. However, the ALJ entirely failed to address the extensive, consistent medical evidence regarding Burrows' apparent inability to meet the attendance/absenteeism requirements of work.

In this case, it is undisputed that Plaintiff suffered from PTSD and TBI as a result of his military combat service in Iraq and Afghanistan. It is also undisputed that he sought treatment for these injuries continuously from 2010 onward. Indeed, the ALJ found that PTSD, TBI, anxiety, cognitive disorder, adjustment disorder, post-traumatic migraine headaches, and post-concussive syndrome were severe impairments.

The medical record is replete with opinions from treating or examining physicians throughout the time period that Burrows was unable to adhere to a consistent work schedule. Dr. Rentas-Reyes opined in 2011 that Burrows suffered from "post-traumatic migraine headaches that were severe enough to make him completely disabled at least twice a week. When this happens, he cannot function at work." R. 304. Dr. Mercatoris opined in 2013 that Burrows "may not maintain regular attendance due to his PTSD symptomatology yet." R. 962. The ALJ stated that the opinion of Dr. Mercatoris was entitled to "great weight." Dr. Richards opined in 2014 that Burrows was "markedly limited" in his ability to sustain a normal work day and work week (i.e., effectively precluded from performing work in a meaningful manner). R. 977. Dr. Richards opined that the impairments would last more than twelve months and that Burrows was not a malingerer. R. 981. Dr. Balmer, who treated Burrows for a lengthy time beginning in January 2013, completed a Headaches Impairment Questionnaire which reflected that Burrows had severely intense headaches of 5-7 hours four times a week. R. 1337-1338. Dr. Balmer

opined that Burrows would be precluded from performing even basic work more than three times per month. R. 1341. The VE testified at the hearing that an employer's tolerance for absenteeism in the unskilled jobs suitable for Burrows' RFC would be less than one day per month. R. 83-84.

As recently explained in *Todaro v. Colvin*, 2015 WL 791420 at *3-5 (W.D. Pa. Feb. 25, 2015):

> An ALJ must base his RFC assessment on all of the relevant evidence of record. 20 C.F.R. §§ 404.1545(a), 416.945(a). In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). That is, the ALJ's decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203–04 (3d Cir.2008); *see also* *Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir.2001) (the ALJ's decision should allow the reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

In this case, as in *Todaro*, the ALJ found that Plaintiff had severe PTSD and headache-related impairments which persisted for years. The prognosis of Dr. Mercatoris was that these are "chronic conditions." R. 961. Yet, as in *Todaro*, the ALJ failed to discuss in any meaningful way the impact of those impairments on Burrows' ability meet the absenteeism requirements of gainful employment. Thus, this case must similarly be remanded for further consideration.

Upon remand, the ALJ should also consider the teaching of the *Todaro* Court that the acts of engaging in activities of daily living and caring for minor children do not disprove disability due to migraine headaches. The ALJ should also give more substantial weight to the disability determination of the VA. As explained in *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), the differences between the VA and Social Security definitions of disability are "small." As the *Hall* Court explained, if the VA deems a person totally unemployable by reason of his disability, that

equates to a finding of total disability under the regulations of the Social Security Administration as well.  The Court notes that in *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006), the case cited by the Commissioner for the proposition that the VA employs a lesser standard of disability, the matter was remanded to the Commissioner in part because the ALJ should have given the VA disability determination more weight.

**IV.     Conclusion**

Under the applicable standards of review and the current state of the record, the Court concludes that the finding of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is not supported by substantial evidence, as explained above.  Accordingly, this case must be remanded to the Commissioner for further consideration.

For these reasons, the Court will **DENY** the Motion for Summary Judgment filed by the Commissioner (ECF No. 10) and **GRANT** the Motion for Summary Judgment filed by Plaintiff (ECF No. 12).  An appropriate Order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON LEE BURROWS,<br>          Plaintiff,<br><br>         v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>          Defendant. | 1:14-cv-00314-TFM |

## ORDER of COURT

**AND NOW**, this 6th day of August, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the Motion for Summary Judgment filed by the Commissioner (ECF No. 10) is **DENIED** and the Motion for Summary Judgment filed by Plaintiff (ECF No. 12) is **GRANTED.**

The clerk shall docket this case closed. This matter is hereby remanded to the Commissioner for further consideration in accordance with the foregoing Memorandum Opinion.

          BY THE COURT:

          s/ Terrence F. McVerry
          Senior United States District Judge

cc:    **Beth Arnold**
      Email: fedcourt@binderlawfirm.com

      **Christian A. Trabold**
      Email: christian.a.trabold@usdoj.gov